UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No: |
| KOPPERS INDUSTRIES, INC. | ) | |
| Defendant. | ) | CV-03-C-0097-S |

FILED
03 JAN 15 PM 2:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### NATURE OF ACTION

1. This civil action is brought against Koppers Industries, Inc. (KII) pursuant to Section 309 of the Clean Water Act (the "CWA"), 33 U.S.C. § 1319; Section 113 of the Clean Air Act (the "CAA"), 42 U.S.C. § 7413; and Section 6928 of the Solid Waste Disposal Act (as amended), 42 U.S.C. § 6928. The United States seeks penalties for violations of these statutes and injunctive relief for violations of the Clean Water Act.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to section 309(b) of the CWA, 33 U.S.C. § 1319(b); Section 3008 of the Solid Waste Disposal Act (as amended), 42 U.S.C. § 6928; Section 113 of the Clean Air Act (CAA), 42 U.S.C. §7413; and 28 U.S.C. § 1331, § 1345 and § 1355.

3. Venue is proper in the Northern District of Alabama pursuant to 33 U.S.C. § 1319(b), 42 U.S.C., § 6928(a), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391 and 1395(a) because it is the judicial district where the Defendant is located and in which some of the violations occurred.

## PARTIES

4. Plaintiff United States of America is acting at the request and on behalf of the Administrator of the EPA.

5. Defendant Koppers Industries, Inc. produces carbon compounds and treated wood products. The Defendant operates facilities throughout the United States and has its headquarters in Pittsburgh, Pennsylvania.

## FIRST CLAIM FOR RELIEF
### (Clean Water Act)

6. Paragraphs 2 through 5 are incorporated here by reference.

7. The Clean Water Act prohibits the "discharge of pollutants" by any person into navigable waters of the United States, except in compliance with sections 301, 302, 306, 307, 318, 402, or 404 of the Act. 33 U.S.C. § 1311(a). A "discharge of a pollutant" includes "any addition of any pollutant to navigable waters from any point source . . . ." 33 U.S.C. § 1362(12).

The term "pollutant" under the Clean Water Act includes industrial waste discharged into water. 33 U.S.C. § 1362(6).

8. The Clean Water Act authorizes EPA to promulgate pretreatment standards for pollutants that are introduced into publicly owned treatment works ("POTWs"). 33 U.S.C. § 1317(b) and (c). EPA published these standards, known as "General Pretreatment Regulations for Existing and New Sources of Pollution," at 40 C.F.R. Part 403. The standards describe the responsibilities of federal, state, and local governments, as well as industry and the public, to control pollutants that pass through or interfere with treatment processes in POTWs.

9. EPA may authorize a state to regulate direct discharges to navigable waters and pollutants introduced into POTWs through federally enforceable permits. 33 U.S.C. § 1342(b). EPA has authorized the following states to issue such permits: Alabama, Arkansas, California, Colorado, Florida, Illinois, Kentucky, Louisiana, Mississippi, Oregon, Pennsylvania, South Carolina, Texas, Virginia, and West Virginia. Each of these states has issued one or more permits under the NPDES program to KII facilities.

10. Prior to January 1, 1999, KII repeatedly violated permits issued to facilities located in the following cities under 33 U.S.C. § 1342 by discharging pollutants in excess of permit limits or by failing to fulfill reporting requirements: Fulton, Alabama; Montgomery, Alabama; Woodward, Alabama (Coke Plant); North Little Rock, Arkansas; Oroville, California; Denver, Colorado; Gainesville, Florida; Cicero, Illinois; Galesburg, Illinois; Guthrie, Kentucky; Logansport, Louisiana; Grenada, Mississippi; Portland, Oregon; Monessen, Pennsylvania; Susquehanna, Pennsylvania; Florence, South Carolina; Houston, Texas; Somerville, Texas; Roanoke, Virginia; Follansbee, West Virginia; Green Spring, West Virginia.

11. The Clean Water Act provides that any person who violates Section 301 of the Act, 33 U.S.C. § 1311; any permit condition or limitation in a permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342; or any requirement imposed in a pretreatment program approved by EPA shall be subject to a civil penalty not to exceed $25,000 per day for each violation. 33 U.S.C. § 1319(d). For each violation occurring after January 30, 1997, the maximum penalty increases to $27,500 per day for each violation pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101- 410, enacted October 5, 1990; 104 Stat. 890), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Public Law 104-134, enacted April 26, 1996; 110 Stat. 1321).

12. The Clean Water Act also provides that persons who violate the Act may be subject to other appropriate relief, including a permanent injunction. 33 U.S.C. § 1319(b).

13. Unless enjoined by the Court, KII will continue to violate the requirements of the Clean Water Act.

## SECOND CLAIM FOR RELIEF
(Clean Air Act)

14. Paragraphs 2 through 5 are incorporated here by reference.

15. The Clean Air Act requires each state to adopt and submit to the Administrator for approval a plan for the implementation, maintenance and enforcement of primary ambient air quality standards. 42 U.S.C. § 7410(a). EPA has approved Alabama's state implementation plan (SIP). *See* 40 C.F.R. Part 52, Subpart B. Violations of this SIP are federally enforceable. 40 C.F.R. § 52.23.

16. Alabama's SIP incorporates national emission standards for hazardous air pollutants (NESHAPs), including the following standards at issue in this case:

- 40 C.F.R. Part 61, Subpart L: National Emission Standard for Benzene Emissions from Coke By-Product Recovery Plants;
- 40 C.F.R. Part 61, Subpart V: National Emission Standard for Equipment Leaks (Fugitive Emission Sources); and
- 40 C.F.R. Part 63, Subpart L: National Emission Standards for Coke Oven Batteries.

These standards applied to KII's Woodward coke by-product plant at all times relevant to this Complaint. KII closed the plant in 1998.

17. When KII's Woodward coke by-product plant was operating, the major air pollutant emission sources included the coke oven batteries and the coke by-products plant.

18. When it was operating, KII's Woodward coke by-product plant was subject to the NESHAP requirements of 40 C.F.R. Part 61, subpart L, incorporated by reference into the Alabama SIP. These regulations require the control of benzene emissions from tanks and sumps at coke by-product recovery plants 40 C.F.R. § 61.130(a). One way to control such emissions is through the installation of a gas blanketing system. 40 C.F.R. § 61.132(a)(2).

19. A gas blanketing system to control benzene emissions was installed at KII's Woodward coke by-product plant in 1991.

20. In October 1996, the gas blanketing system used to control benzene emissions was shut down. A new gas blanketing system was installed and became fully operational on May 8, 1997.

21. From October 1996 to May 8, 1997, KII's Woodward coke by-product plant operated without controlling benzene emissions.

22. KII therefore violated 40 C.F.R. § 61.130(a) because it failed to control benzene emissions from the Woodward coke by-product plant from October 1996 until May 8, 1997.

23. EPA regulations at 40 C.F.R. § 61.138 also require a facility to submit semi-annual reports on the status of compliance of its benzene emissions control system. These reports must state whether all parts of Subpart L were complied with, and whether there were any revisions to or abnormalities in the system, during the reporting period.

24. KII failed to submit the required semi-annual reports from August 1994 to September 1997 for its benzene emissions control system.

25. KII therefore violated 40 C.F.R. § 61.138, because it failed to submit semi-annual reports on the status of compliance of its benzene emissions control system.

26. EPA regulations at 40 C.F.R. § 61.242 require a facility to identify, tag, and monitor monthly potential fugitive emissions from equipment leaks. The Alabama SIP requires submission of these monitoring reports on a quarterly basis.

27. Although KII submitted quarterly reports indicating compliance with 40 C.F.R. Part 61, Subpart V, many of the tags required to be present on the potential fugitive emissions sources were either missing or illegible in March of 1997.

28. KII therefore violated 40 C.F.R. § 61.242 because it failed to tag or properly monitor potential fugitive emissions from equipment leaks in March of 1997.

29. The coke oven batteries at KII's Woodward coke by-product plant were subject to the NESHAP requirements of 40 C.F.R. Part 63, Subpart L, incorporated by reference into the Alabama SIP.

30. EPA regulations at 40 C.F.R. § 63.311 require a facility to submit semi-annual reports on the status of its compliance with 40 C.F.R. Part 63, Subpart L.

31. KII submitted a semi-annual report on its compliance status in August of 1995, and did not submit another semi-annual report until July 1997.

32. KII therefore violated 40 C.F.R. § 63.311 because it did not submit semi-annual reports on its compliance status with 40 C.F.R. Part 63, Subpart L, from August 1995 until July 1997.

33. Pursuant to Section 113(b) of the CAA, KII is subject to civil penalties up to $25,000 per day for each violation occurring on or before January 30, 1997. KII is subject to a civil penalty of up to $27,500 per day for each such violation occurring after January 30, 1997 pursuant to the Federal Civil Penalties Inflation Adjustment Act (as amended).

### THIRD CLAIM FOR RELIEF
### (Solid Waste Disposal Act, as amended)

34. Paragraphs 2 through 5 are incorporated here by reference.

35. The Administrator is authorized to promulgate regulations governing the management of used oil destined for recycling by Section 3014(a) of the Solid Waste Disposal Act (as amended), 42 U.S.C. 6935(a). EPA promulgated these regulations, which are codified at 40 C.F.R. Part 279, on September 10, 1992.

36. EPA regulations at 40 C.F.R. § 279.22(b)(1) require a facility to store used oil in containers and tanks that are in good condition with no severe rusting, apparent structural defects or deterioration.

37. In March 1997, KII collected used oil at the KII Woodward coke by-product plant in a severely crushed tank.

38. KII therefore violated 40 C.F.R. § 279.22(b)(1) because its used oil was not collected in a tank that was in good condition.

39. EPA regulations at 40 C.F.R. § 279.22(c)(1) require a facility to store used oil in containers and tanks that are clearly marked with the words "Used Oil."

40. In March of 1997, KII collected used oil at the KII Woodward coke by-product plant in an unmarked tank.

41. KII therefore violated 40 C.F.R. § 279.22(c)(1) because its used oil was not collected in a tank that was clearly marked with the words "Used Oil."

42. Pursuant to Section 3008(g) of the Solid Waste Disposal Act (as amended), KII is subject to civil penalties up to $25,000 per day for each violation occurring on or before January 30, 1997. KII is subject to a civil penalty of up to $27,500 per day for each such violation occurring after January 30, 1997 pursuant to the Federal Civil Penalties Inflation Adjustment Act (as amended).

## **PRAYER FOR RELIEF**

THEREFORE, the United States requests that the Court enter judgment on its behalf against KII as follows:

a. Order KII to cease violating the Clean Water Act.

b. For violations beginning five years prior to the date this complaint was filed, assess civil penalties against KII of up to $25,000 per day for each day of each violation that occurred before January 31, 1997, and up to $27,500 per day for each day of each violation that occurred after that date.

c. Award the United States its costs in this action.

d. Grant the United States such other relief as the Court deems appropriate

Respectfully submitted,

*Tom Sansonetti*
THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division


*Paul S. Wolfteich*
PAUL WOLFTEICH
Senior Counsel, Environmental Enforcement Section
U.S. Department of Justice
Box 7611
Washington, D.C. 20044
(202) 514-3482

9

ALICE MARTIN
United States Attorney

Herbert J. Lewis, III
Assistant United States Attorney
200 Robert S. Vance Fed. Bldg.
1800 5th Avenue North, Room 200
Birmingham, Alabama 35203-2198

OF COUNSEL:

Peter W. Moore, Esq.
Office of Regulatory Enforcement
Office of Enforcement and Compliance Assurance
U.S. EPA  Mail Code 2248-A
1200 Pennsylvania Avenue, N.W.
Washington D.C.  20460